Roger Cocker v. The Terminal Railroad Association. Mr. Poplar. Good morning, may it please the Court. My name is Rick Poplar. I'm from St. Louis and I have today the privilege of representing the appellant, Terminal Railroad Association of St. Louis Pension Plan for Non-Scheduled Employees. The issue on this appeal is whether the plan administrator arbitrarily and capriciously interpreted a single sentence of that plan. The Eighth Circuit answered that question just January 29th of this year in an identical case and it held that the plan administrator's interpretation was not arbitrary and capricious. When confronted with the very same question of plan interpretation that is now before this Court, the Eighth Circuit held that the plan provisions were complex and in some instances ambiguous, but that the plan administrator's interpretation was reasonable, rational, consistent with the plan language, and carefully explained. This Court is not obliged to follow the Eighth Circuit's decision in 1987 in Colby v. J.C. Penney, quote, we give most respectful consideration to the decisions of other courts of appeals and follow them whenever we can. This Court has explained that it should give deference and even something close to complete deference when the two cases involve parties having the same interests, when they challenge the same practice of the same defendant. That's not true. What, we're required to give, I don't care what I said 29 years ago, but we don't give deference to other courts of appeals' decisions. Yeah, we read them for their substance, their quality, and so on. Okay, well, I relied on the decision to address this appeal on its merits. We'll decide whether we agree with the Eighth Circuit. Okay, but I would just like to add one further point before getting that, Your Honor. If this Court rules inconsistently with the Eighth Circuit, it puts the plan administrator in an untenable position, because that means Missouri participants get paid one thing and Illinois participants another. No, it just puts the justices of the Supreme Court to a decision about whether to grant certiorari on a conflict with one pension plan. Just argue the merits. Okay, the critical sentence is 5.5 of this plan, and it uses the word payable twice. It says, the first sentence is referring to the amount payable as a gross benefit under the terminal plan, and the second instance it's referring to the amount payable from the prior plan. But in neither instance does the sentence explicitly identify payable when. The Eighth Circuit noted that ambiguity, and this Court has held that when there is an ambiguity, that's particularly when the Court should give deference to the plan administrator's interpretation. The parties agree to the question— You know, it's not deference there either. The question is whether the administrator has authority to do something. If you act within the scope of your authority, your decision is conclusive. It's not because somebody has deferred to you, it's that you have authority to do something. When we enforce an arbitrator's decision, it's not that we're deferring to the arbitrator, we're saying the arbitrator had authority to act. That's your argument here, as I understand it. The administrator had authority under this document to make the decision he made. Yes. The parties agree that in the first instance, payable refers to the amount payable at the normal retirement date. But the appellee would say that payable means something different the second time it is used in the same sentence. And we would say that textually, that does not make any sense. But we also think that there are four other reasons why the plan administrator's interpretation in this case is clearly the more reasoned and better interpretation. First of all, if you adopt the appellee's interpretation, it means that the plan isn't able to offset the amounts that are payable and paid to him by the other plan. And you might say, well, how do we know that this plan intends there to be a full and complete offset? Well, there are two ways that we know that. First of all, Section 5.5B says that the plan is to, quote, be offset by the amount of retirement income payable under any other defined benefit plan. It does not say to offset only a portion of that amount that is a payable, or it doesn't say offset some of it. It says to offset the entire amount. Do you know whether this is a common kind of plan in the railroad industry? I must say I've never seen one structured like this before. Your Honor, I cannot say that this is common in the railroad, but it is not uncommon for plans... Not un- is almost as bad as quasi-contract. You put in a double negative, it doesn't mean anything. The reason I ask this question, besides the unusual fact that I haven't seen anything like this, is that one might look, if there are other pension plans structured like this, we might see how they have been interpreted by their administrators or by other courts. We're not limited entirely to cases involving the Terminal Railroad Pension Plan. We might want to cast a somewhat broader net. So are there- do you know of other plans that are structured like this? And do you know of other cases about plans structured like this? I'm not a plan drafter, but I am told that this is- there are other plans drafted in this fashion. I agree with you, I have not seen a case where the court has confronted that fact scenario. Okay. Well, if it's not there, it's not there. So I believe that when you read 5.5, it is clear that we are supposed to offset the amount payable from the other plan, and under Appelee's interpretation, we're not allowed to do that. We would only be able to offset a portion of it, and that's not what this plan calls for. The second thing is that when you look at the last paragraph of Section 5.5, it says that regardless of the form of payment that the appellee receives, or the participant, we are supposed to convert it to a single life annuity at the normal retirement age and offset that amount. It doesn't matter if he receives a joint and survivor annuity or an early retirement benefit, we are to convert it to a single life annuity at normal retirement age and offset it. And that's exactly what we did in this case. If you do it otherwise, the participant can take early retirement from his prior plan, suck out months and even years of benefits, and then retire from our plan, and thereby frustrate our ability to offset the amount that was payable to him under that prior plan. The second argument I would make is that the actuary has no way of determining plan liabilities and funding requirements if he can't know what that offset is going to be. You see, the day that Mr. Cocker walked into the door at Terminal, we knew what his normal retirement date benefit was under the prior plan, and the actuaries could therefore make the necessary funding requirements. But if he can arbitrarily change that at any time by selecting an early retirement date and drastically changing the amount of the offset, then we have no practical way of determining our liabilities and funding requirements. The third point is, and we argue this in our brief as well, is that under Mr. Cocker's interpretation, two employees with the exact same employment history and salary history, both with UP and with us, end up with drastically different pension benefits under us for no reason other than the fact that one took an early retirement benefit and the other one did not. I don't believe that any layperson, any participant, reading that sentence or this entire plan would expect such disparate treatment of participants. The fourth ground I would argue is that under Mr. Cocker's interpretation, the word payable has two different meanings depending upon which day of the week you read it. For instance, the day before he took his early retirement benefit, payable meant one thing according to him, but the day after he took his early retirement benefit, the word payable meant something else. And I don't think that's the way a plan administrator... Wait a minute, what are the two meanings of payable? Pardon? What are the two meanings of payable? Payable, in one instance he would, I think, agree that it means the benefit payable at the normal retirement date, but the day after he retires, or the day after he takes his early retirement benefit, he would say no, it means the amount payable as an early retirement benefit. So that it can have two different meanings between Monday and Tuesday. Not the word payable that has the different meanings. Yeah, it's referring to different things. You mean it's used in two different ways. It means it's referring to two entirely different things. Yes. So in summary, the language in Section 5.5 is not a model of clarity, but we believe that it may and reasonably should be interpreted as the plan administrator interpreted it here, and as also the Eighth Circuit agreed. And for these reasons, we would respectfully ask the Court to reverse the judgment of the District Court. Okay. Thank you. Thank you very much. We'll hear from Mr. Singer. May it please the Court, it's a true honor to be here, Your Honors. I'd like to first go to the point that Judge Easterbrook raised. There is a Seventh Circuit case that is almost on all fours. The Bandack v. Eli Lilly, where a multinational company has many divisions, has a rule that the service in both the domestic and international divisions are counted for the Lilly pension, has a rule that there's an offset for the other plans. Mr. Bandack goes to England, earns credit under the English plan, it gets combined in the Lilly plan, he retires, he gets his credit for England, and the offset provision applies only to qualified plans. Mr. Bandack says that's qualified under the United States tax code. Lilly says that's not fair, that's double dipping. And the Seventh Circuit correctly says in an ERISA benefit claim case, we apply the plan terms. And that's exactly really what we have here. And in addition, the Seventh Circuit said there should be heightened review because of the conflict between Lilly as plan sponsor seeking to get a result, which is really a plan administrator, which is to apply the written plan terms. Now we think, in the limited time I have, I'm going to go to the heart of the matter. But that conflict exists in all of these cases. Well, not, Your Honor, where the plan sponsor, what all of these, the four reasons are plan sponsor reasons of why you would want to draft the terminal plan in a certain way. They would be legitimate considerations when you're sitting down and drafting the plan. But once the plan is written, it's supposed to be applied according to the plain language of its terms. In my brief, I go into all the pros and cons. I don't understand the plain language applied to this, to the word payable. Well, the... Payable doesn't mean paid. It doesn't mean paid, Your Honor, but is the... Could you use it to mean paid? Respectfully, I don't, Your Honor. When Mr. Coker, he retired from the Union Pacific in 2009 on early retirement, age 55. At that point, under no set of circumstances was his normal retirement benefit, which going to be payable to him, never. And what's equally fundamental is that the Union Pacific normal retirement benefit was to start in 2019. Under no set of circumstances could that higher benefit be moved forward to 2010 when he applies for his early retirement under the terminal. Now, the district court concluded because the conditions for the Union Pacific normal retirement benefit could no longer be satisfied, it was not payable. Now, we think the word payable is its ordinary meaning. When he applied for his Union Pacific, for his terminal pension in 2010, it's the benefit payable from the Union Pacific plan, from the terminal plan at that time, and the offset is for the Union Pacific benefit that's in pay status. Otherwise, if you start inserting the words at normal retirement age, that section 5.5 makes no sense, and it would not permit the terminal plan to offset at early retirement. Remember, we're still years away from normal retirement. How do you move forward to 2010 if you insert that would have been payable at normal retirement age? By inserting those words, you make payable mean it's opposite. Mean what? It's opposite. It's not payable any longer. That by inserting the terms that would have been payable at normal retirement age, these are benefits that will never be payable to Mr. Coker and never would have been. By taking that 2019 date and moving it forward to 2010, it violates the plan terms, the basic concept of the time value of money, the basic principle of actuarial equivalence. The district court correctly found that the actuarial equivalence is what creates the apples comparison between the early retirement and the normal retirement. So what the terminal did was... So what force do you give to the term offset? Time and income benefits payable under this plan shall be offset. By the retirement income. By the amount payable under any other plan. Right. How in your view is that supposed to work? Well, the summary plan description refers to benefits received. There's language in the second paragraph of 5.5B that replies to the benefit... I don't understand how you're responding to my question. It is the benefit paid. Payable doesn't mean paid. Well, then the alternative definition, Your Honor, would be a benefit that may be paid in the future. That's the only other definition of payable, Your Honor. A benefit, if it never was available or the conditions have passed, it's not payable. But this is about offsetting one benefit against another. It's offset... How does that... Do you think there is no offset? No, of course there's an offset. What's the offset? The offset is for the Union Pacific early retirement pension to offset the Terminal Railroad early retirement pension. That's the only reading that really makes sense. They have never said that we're going to wait until 2019 to apply the offset. We probably wouldn't have had this lawsuit if they had said, We'll wait until 2019 and apply the normal retirement benefit, because that would be the equivalent of applying the lower early retirement benefit in 2010. But they didn't do that. The... So they take this fictitious benefit. And what I would urge the court is really, in judicial review, you're supposed to... I believe the court is to go back to the June 15, 2010, decision of Mr. Pauble. And it's relatively short. And what he says in there on this critical issue, the meaning of the word payable, is that Mr. Coker is saying payable means paid. I cannot administer a plan that varies based upon when an employee retires early on the other railroad plan. Therefore, I'm going to adopt a fictitious offset. I'm going to take it forward to the normal retirement date, and then I'm going to take that amount and apply it back in time to the date that you retired. Now, by taking that fictitious amount, you've just destroyed the word payable. And in addition, it resulted in treating two groups of similarly situated participants. But I still don't understand what force you... What you understand an offset to be. An offset is going to be a subtraction of the person's retirement benefits. And they did that, Your Honor. We agree that there should be an offset. But the offset should have been for his lower actual early retirement pension. Rather than from what? Rather than the higher normal retirement pension that would be payable in 2019. It's a difference of over 100% because of actuarial adjustment. So the terminal, the Union Pacific early retirement... Do you want to shrink the offset to the earlier period? Yes. Well, what's the basis for your... What's the basis for our... For us saying the plan administrator should have used the smaller number for the offset? Because... Well, it's an arbitrary choice, isn't it? Where in the plan does it say use the smaller number for the offset? It says use the payable number. It has to be payable. If it's not payable... But it doesn't have to be payable yesterday or tomorrow or what. Payable just means this is a potential benefit for you. But it at least has to be that, Your Honor. And it wasn't even that. No, this is something that could be payable or could be offset. That benefit could not be payable. Suppose your client filed a written waiver of all benefits from the Union Pacific. It just said, I hereby commit never to accept a penny from the Union Pacific. The Union Pacific sends a letter back saying, thank you very much. We appreciate the gift. Could your client then take that to the Terminal Railroad Pension Plan and say the offset is now zero because I'm actually receiving nothing from the Union Pacific? I don't know. No, because you would say the Terminal Plan says it's what is payable rather than what your client actually gets, which in my hypothetical is zero. Well, the question is why it's any different if what your client does is write a letter to Union Pacific saying I'll accept a monthly benefit of $1,000 rather than this greater benefit I could have had. Well, I see my red lights. To address the judge's point, I believe that what was payable, let's say take your example in 2009. I don't think you're grappling with the question. You conceded that if your client voluntarily surrenders the benefit, that doesn't affect the offset because the higher benefit was payable. The question I'm asking is why a voluntary surrender should be treated differently from a voluntary decision to accept a lower monthly but non-zero benefit. The answer to your question, Your Honor, is that the benefit was payable in 2019. You can't waive that for the offset. But you can't move, you can't take that amount payable in 2019 and say we're going to pretend that it was payable in 2010. Yeah, okay, I have your position. Okay, well, thank you very much, Mr. Singer. Mr. Plotkin? Thank you, Your Honor. I think that Judge Easterbrook's gone to the heart of the issue, and the other point I would make is that what Mr. Singer will tell you is that the day before he made the election, the payable was the normal retirement date benefit, but that somehow the day after he made the election to take an early retirement, that was no longer applicable, and instead you have to look at the amount that was actually paid, that somehow payable is converted to the word paid, and that doesn't make sense. And it also isn't the way a plan administrator can interpret and administer a plan for 50 employees, all who have different factual scenarios. The point also about BANDAC is a wholly different case. There they said we're going to offset that amount which is paid to you from a qualified pension plan, and the court properly said, well, you know, in England there is no such term as a qualified pension plan because they don't have the IRS who qualifies plans under Section 411. For all of these reasons, again, we would ask the court to reverse the judgment. Okay, thank you, Mr. Klausler and Mr. Singer.